Filing # 75976229 E-Filed 08/03/2018 04:33:58 PM

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA

Eric A. Brown, individually and derivatively on behalf of Metrics Medicus, Incorporated, a Florida corporation,

    Plaintiffs,

v.

Pamela Andreatta,

    Defendant,

v.

Metrics Medicus, Incorporated, a Florida corporation,

    Nominal Defendant

Case No.: 3:18-cv-1002-34JRK ~~16-2018-CA-5245~~

Division:

## VERIFIED COMPLAINT

Plaintiff, Eric A. Brown, individually and derivatively on behalf of Metrics Medicus, Incorporated ("Metrics"), sues Defendant Pamela Andreatta as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Eric A. Brown is a South Carolina citizen and resident.

2. Defendant Pamela Andreatta is a Florida citizen and resident.

3. Defendant Metrics Medicus, Incorporated is a Florida corporation with its principal place of business in Duval County, Florida.

4. The amount in controversy exceeds $15,000, exclusive of prejudgment interest and costs. Equitable remedies are also sought.

5. Venue is proper in this Court because Andreatta is a resident of Duval County and Metrics' principal place of business is in Duval County.

## GENERAL ALLEGATIONS

### History and Agreement

6. In 2012, Brown began working with Andreatta and her former spouse, Sebastian Andreatta, regarding a collaboration on an application designed to assist medical providers.

7. The parties continued to work together over the years without a formal agreement regarding ownership or equity positions. However, both Brown and Andreatta made valuable contributions, including ideas, expertise, and labor to the venture.

8. In 2013, a California corporation was created called Metrics Medicus ("California Metrics"). The parties continued to collaborate and work together on various projects under the umbrella of California Metrics. California Metrics never issued any shares.

9. Also in 2013, Brown began serving as the Chief Medical Officer of California Metrics.

10. In mid-2015, Sebastian Andreatta declared his intent to leave the corporation, and Brown took over management of the existing business relationships, business accounts, and other management tasks of California Metrics, including securing and maintaining insurance for the corporation.

11. By late 2015, Sebastian and another minor contributor, Mark Smith, had officially left California Metrics and the joint venture.

12. At this time, Andreatta and Brown began negotiations regarding how to move forward. Andreatta proposed that Andreatta and Brown continue their business venture as equal partners and owners.

13. To achieve this purpose, Andreatta proposed that she be reimbursed for certain monetary contributions made to California Metrics to equalize the contributions made by Andreatta and Brown.

14. The proposal contemplated dissolving California Metrics and merging the joint venture and equal partnership with Brown and Andreatta into a new company that would be incorporated in Florida where Andreatta had recently moved.

15. Andreatta proposed that Andreatta and Brown would be 50/50 partners in this corporation.

16. Specifically, in an email dated September 3, 2015, Andreatta wrote that "we discussed and agreed that we would [make certain reimbursements] . . . to assure we have equivalence moving into the new year and within our new corporate structure." Additionally, Andrea wrote that "this will allow us to go into our first year . . . as equal partners." A true and correct copy of this email is attached as Exhibit A.

17. Brown accepted these terms, and the agreed upon distributions were made to Andreatta at the end of 2015.

18. As of 2016, Andreatta and Brown were engaged in a joint venture to develop and monetize the various medical applications they had been working on together for years.

19. Consistent with the agreement that Andreatta and Brown would be "equal partners," Andreatta and Brown agreed to exercise joint control over the enterprise and its assets, and each owned an equal interest in the property and subject matter of the venture. Andreatta and Brown had an equal right to share in the profits and any losses resulting from the venture.

20. On May 16, 2016, Brown and Andreatta incorporated the Florida corporation, Metrics Medicus, Inc. Brown served as the Incorporator. The Articles of Incorporation are attached hereto as Exhibit B.

21. Brown and Andreatta transferred all assets and property of their joint venture to Metrics.

22. With the consent of all relevant parties, California Metrics was dissolved.

**The Incorporation of Metrics**

23. In the Articles of Incorporation of Metrics, Andreatta was appointed as the Chief Information Officer and a Director of Metrics. Brown was appointed as the Chief Medical Officer and a Director of Metrics. Brown was the sole Incorporator and Andreatta was named as Metrics' Registered Agent.

24. To start Metrics, Andreatta and Brown transferred assets and property from their joint venture to Metrics.

25. Consistent with their agreement, Brown and Andreatta were and are equal owners of Metrics, and they exercised equal control as 50/50 owners and 50/50 directors of Metrics.

26. However, no shares were ever formally issued in Metrics and no shareholder agreement was executed.

27. Both Andreatta and Brown continued to contribute their time, expertise, skill, and labor to Metrics.

28. In addition, both Andreatta and Brown made additional monetary contributions in the form of $20,000 each.

29. Neither Andreatta nor Brown ever received distributions from Metrics.

## The Intellectual Property

30. As of August, 2016, Brown began serving in the additional role of CEO of Metrics at the request of Andreatta.

31. As part of his role as CEO, Brown was to manage the acquisition of formal patent rights for Metrics' intellectual property.

32. Andreatta and Brown, through their joint venture and as part of Metrics, had developed and invented a product (the "CareAssess Product") which consisted of (1) the CareAssess platform and (2) various data files, called "assessment instruments" that would be used on the platform.

33. The CareAssess Product is designed to allow medical providers to conduct objective real-time quality assessments of different medical procedures.

34. The CareAssess platform consists of a smart phone application connected to a back-end web portal and database platform.

35. The assessment instruments are data files describing the various steps and standard of care for certain medical procedures.

36. The CareAssess platform database hosts a library of the assessment instruments for use in the application.

37. This combined CareAssess Product allowed healthcare providers to download assessment instruments to the CareAssess application on their phone. The providers then used the application to conduct objective quality assessments of medical procedures in real time.

38. The variety and completeness of the assessment instruments available for use on the CareAssess platform is essential to the marketability of the entire CareAssess Product.

39. In 2017 and early 2018, Andreatta worked on entering the assessment instruments into the CareAssess platform, while Brown and two contract employees of Metrics worked on other aspects of the CareAssess Product, including de-bugging the application and supporting demonstrations to potential customers.

40. Brown was also tasked with managing the marketing and sales strategy aspects of Metrics, including marketing and sales related to the CareAssess Product. In that role, Brown conducted a number of significant demonstrations to hospitals, individuals in the graduate education and nursing education space, and other interested companies.

41. Brown, with the consent of Andreatta, also retained DLA Piper to apply for a patent for Metrics for the CareAssess Product.

42. As part of the patent application process, Andreatta and Brown each assigned any individual rights they had over the CareAssess platform to Metrics. A true and correct copy of this assignment is attached as Exhibit C.

43. The final patent application was submitted on October 2, 2017.

44. The patent was initially rejected, but Metrics received a Notice of Allowance on May 8, 2018, and Patent No. 10,026,052 was issued on July 17, 2018 (the "Patent"). A copy of the Patent is attached as Exhibit D.

45. The CareAssess Product, including the Patent, is Metrics' most valuable asset.

### Andreatta's Unauthorized Actions

46. On May 8, 2018, Metrics received notification that the full patent application was accepted. At this point, Metrics had 90 days to submit a dependent patent application for the library of assessment instruments.

47. This had always been the plan for the patent for the CareAssess Product and Andreatta had agreed to this on multiple occasions.

48. However, once the notice was received, Andreatta refused to submit the dependent patent application and instead claimed she individually owned the assessment instruments entered into the Metrics CareAssess platform. This prevented Metrics from properly completing its patent over the CareAssess Product.

49. Then, starting in mid-May, Andreatta began taking actions without the consent or consultation of Brown in violation of the formal corporate structure, as well as the 50/50 equitable ownership agreement.

50. Andreatta began deleting and removing mass amounts of files and documents from the Metrics Dropbox, which contains the corporation's official records and proprietary documents.

51. Andreatta also altered the Metrics website to redirect all sales inquiries, which formerly went to Brown, to a contractor for Metrics that has assisted Andreatta with her conversion of Metrics' assets.

52. During this time, Andreatta expressed her desire to "dissolve the partnership," but Brown never agreed to any of Andreatta's proposals. Andreatta never called a meeting of the board of directors or shareholders of Metrics and never prepared a proper written consent for execution.

53. Brown never voted for or provided his written consent to any proposal for dissolving Metrics. Instead, Brown agreed to discuss the issue, and asked Andreatta to stop making unilateral operational decisions.

54. In response, Andreatta chose to proceed without authorization and continued unlawfully transferring the assets belonging to Metrics to herself.

55. On July 10, 2018, Andreatta set up a new limited liability company called Metrics Healthcare, LLC.

56. On July 13, 2018, without the consent or knowledge of Brown, Andreatta executed an assignment of the Patent from Metrics to herself, individually. Andreatta submitted the unauthorized assignment of the Patent to the U.S. Patent Office that same day. A copy of this unauthorized assignment is attached hereto as Exhibit E.

57. Andreatta also removed Brown's access to the back end web functions for the Metrics website and the CareAssess platform. Andreatta also changed the passwords for several demo accounts belonging to Metrics.

58. Andreatta also deleted the entire assessment instrument library. Without the associated assessment instruments, the CareAssess platform is unusable, making it impossible to conduct any sales demonstrations or actually sell Metrics' most valuable product.

59. On July 27, 2018, Brown demanded that Andreatta cease her unauthorized activities and return the property of Metrics.

60. Andreatta failed to do so, and instead completed her looting of Metrics and then proceeded to attempt to complete an unauthorized dissolution of Metrics by draining the Metrics Wells Fargo corporate account and filing dissolution paperwork with the Florida Secretary of State.

61. Andreatta never proposed a plan of dissolution to Brown, and has not provided Brown with the documentation she provided to the Florida Secretary of State to purportedly dissolve Metrics. Brown does not know what misrepresentations Andreatta made to support her

8

authority for dissolving the corporation in the Articles of Dissolution provided to the Florida Secretary of State.

62. Metrics continues to have outstanding obligations to third parties and active contracts and business relationships that are now in jeopardy due to Andreatta's unauthorized actions.

63. On August 1, 2018, Brown against made clear to Andreatta that he did not agree to dissolve Metrics and again demanded that she return the assets she removed from Metrics.

64. Specifically, Brown demanded that Andreatta join him in taking the actions necessary to remedy the unauthorized transfer of corporate assets and the unauthorized filing of articles of dissolution.

65. Brown also demanded that Andreatta join him in calling a meeting of the board or directors and/or execute a written consent to formally issue equal shares in Metrics to Brown and Andreatta.

66. Andreatta affirmatively refused these demands, leaving Brown with no option other than filing suit to protect his own rights as a 50% owner of Metrics, and to protect Metrics from Andreatta's unauthorized attempts to loot and then dissolve the corporation.

67. Further demands would be impractical, unreasonable, and futile because Andreatta is the party who has acted improperly in relation to Metrics and cannot reasonably be expected to authorize the filing of an action against herself.

## COUNT I – DECLARATORY JUDGMENT
### Brown v. Andreatta

68. Brown incorporates by reference his allegations in paragraphs 1-67 as set forth herein.

69. This is an action by Brown against Andreatta for declaratory relief pursuant to Chapter 86, Florida Statutes.

70. Brown is a 50% equitable owner of Metrics and is entitled to an issuance of 50% of the shares of stock of Metrics.

71. Andreatta, as Director of Metrics, has failed to issue the stock to Brown, and Andreatta has disputed Brown's entitlement to 50% of the stock of Metrics.

72. Given this dispute, there exists a present controversy as to the ownership of Metrics, Brown's status as a 50% shareholder of Metrics, and Brown's entitlement to 50% of the shares of stock of Metrics.

73. Andreatta has refused to recognize Brown's ownership rights, has declared that she personally owns the assets of Metrics, and has converted those assets from the corporation without the knowledge or consent of Brown.

74. There exists a bona fide, actual, and present need to resolve the controversy.

75. The powers, privileges, and rights of the parties are dependent upon the facts presented, and the law applicable to the facts.

76. The parties to this declaratory action have an actual, present, adverse, and antagonistic interest in the subject matter of this declaratory action in fact and in law.

77. Unless the Court grants the declaratory and supplementary relief sought herein, Brown will suffer harm, in addition to the harm that Brown has already suffered due to the deprivation of his rights.

WHEREFORE, Brown demands judgment as follows: (1) entry of a judgment declaring (a) that Brown owns 50% of the stock of Metric, (b) that Andreatta's transfer of Metrics' property to herself and her dissolution of Metrics was unauthorized; (2) entry of an injunction

requiring Andreatta to (a) take all necessary actions to formally recognize Brown's 50% ownership stake in Metrics (b) transfer all assets taken from Metrics by Andreatta, including the Patent, back to Metrics, and (c) take all necessary actions to return the CareAssess Product content and access to its original state; (3) damages, together with interest and costs, and (4) any such further relief as the Court deems just and proper.

## COUNT II – BREACH OF FIDUCIARY DUTY
### Brown v. Andreatta

78. Brown incorporates by reference his allegations in paragraphs 1-67 as set forth herein.

79. This is an action by Brown against Andreatta for breach of fiduciary duty, seeking damages in an amount exceeding $15,000.00, exclusive of interest, costs, and attorneys' fees, as well as injunctive and equitable relief.

80. As parties to a joint venture and business partners, Andreatta owed and continues to owe a fiduciary duty to Brown.

81. Andreatta breached her fiduciary duty to Brown by, among other things, refusing to recognize Brown's 50% ownership of Metrics, refusing to issue 50% of the shares of stock of Metrics to Brown, and misappropriating and converting Metrics' assets and property.

82. As a direct and proximate result of Andreatta's breach of her fiduciary duty, Brown has suffered damages.

WHEREFORE, Brown demands (1) an injunction requiring Andreatta to (a) take all necessary actions to formally recognize Brown's 50% ownership stake in Metrics (b) transfer all assets taken from Metrics by Andreatta, including the Patent, back to Metrics, and (c) take all necessary actions to return the CareAssess Product content and access to its original state; (2)

judgment in his favor and against Andreatta for damages, together with interest and costs, and (3) any such further relief as the Court deems just and proper.

## COUNT III – TEMPORARY AND PERMANENT INJUNCTION
### Brown, individually and derivatively on behalf of Metrics v. Andreatta

83. Brown incorporates by reference his allegations in paragraphs 1-67 as set forth herein.

84. This is an action by Brown individually and derivatively on behalf of Metrics pursuant to Fla. Stat. § 607.07401, against Andreatta for temporary and permanent injunctive relief within the equity jurisdiction of this court.

85. Brown owns 50% of the shares of Metrics.

86. Andreatta has improperly and unlawful misappropriated and converted the assets of Metrics to her own benefit and deleted and removed critical aspects of technology belonging to Metrics.

87. Andreatta has misrepresented her rights, ownership, and authority in relation to Metrics and Brown and has used those misrepresentations to steal the assets of Metrics.

88. Andreatta has also stolen Metrics' corporate documents and improperly blocked access to Metrics' corporate accounts, documents, and property by the other shareholder, officer and director of Metrics — Brown.

89. Because Brown is one of two directors of Metrics and a 50% owner, his approval is necessary to dissolve Metrics. Since this approval was not given, Andreatta submitted inaccurate and potentially fraudulent documents on behalf of Metrics to the Florida Secretary of State.

90. Andreatta's actions are conflicted and amount to improper self-dealing and a serious breach of her fiduciary duties to Metrics.

91. The above are only some of the examples of the waste, mismanagement, and unauthorized and illegal activities conducted by Andreatta, all of which have resulted in direct substantial economic detriment to Metrics (and to Brown as a 50% owner of Metrics).

92. Andreatta should be temporarily and permanently enjoined from actively participating in any of the management or operations of Metrics.

93. The continued involvement by Andreatta will be detrimental to Metrics and to Brown, individually. The company can be managed and operated effectively through Brown, who is an officer, director, and co-owner of Metrics.

94. Affirmative injunctive relief should also be ordered as necessary to require Andreatta to return all documents, property, and assets of Metrics, including by revoking the assignment of the Patent, returning the CareAssess platform content and access to its original state, and revoking the purported dissolution of Metrics.

95. Unless injunctive relief is granted, Brown and Metrics will suffer irreparable injury for which there is no adequate remedy at law.

96. Brown has the clear legal right to the relief requested.

97. The public interest would not be disserved by the entry of the injunction.

98. Brown has a substantial likelihood of success on the merits.

WHEREFORE, Brown, individually and derivatively on behalf of Metrics, requests that this court enter an injunction removing Andreatta as an officer and director of Metrics, preventing Andreatta from having further involvement in the management of Metrics, ordering the return of all assets and property transferred from Metrics to Andreatta, ordering the return of

the CareAssess Product content and access to its original state, and revoking the improper dissolution of Metrics, an award of attorneys' fees pursuant to Fla. Stat. § 607.07401, as well as any such further relief as the Court deems just and proper.

### COUNT IV – BREACH OF FIDUCIARY DUTY
### Brown, derivatively on behalf of Metrics v. Andreatta

99. Brown incorporates by reference his allegations in paragraphs 1-67 as set forth herein.

100. This is an action by Brown, derivatively on behalf of Metrics, pursuant to Fla. Stat. § 607.07401, against Andreatta for breach of fiduciary duty, for damages in excess of $15,000, exclusive of interest, cost, and attorneys' fees, and for injunctive and equitable relief.

101. Brown owns 50% of the shares of Metrics.

102. Andreatta owed and continues to owe a fiduciary duty and duty of loyalty to Metrics because Andreatta is an officer, director, and shareholder of Metrics.

103. Andreatta breached her fiduciary duty and duty of loyalty to Metrics by, among other things, (1) converting the assets of Metrics to her own personal benefit, including by stealing Metrics' most valuable asset, the CareAssess Product, by assigning the Patent to herself, and by stealing the related data files and technology; (2) deleting and destroying corporate records; (3) and improperly and illegally filing Articles of Dissolution on behalf of Metrics with the Florida Secretary of State.

104. Metrics has suffered damages as a result of the breach by Andreatta of her fiduciary duty and duty of loyalty. Metrics has lost goodwill with clients and business partners, has been deprived of its assets and property, and must correct unauthorized filings with the Florida Secretary of State as a result of Andreatta's purported dissolution of Metrics.

WHEREFORE, Brown, derivatively on behalf of Metrics, demands judgment against Andreatta for damages, interests, costs, and an award of attorneys' fees pursuant to Fla. Stat. § 607.07401, injunctive and/or equitable relief in the form of an order removing Andreatta as an officer and director of Metrics, preventing Andreatta from having further involvement in the management of Metrics, ordering the return of all assets and property transferred from Metrics to Andreatta, ordering the return of the CareAssess Product content and access to its original state, and revoking the improper dissolution of Metrics, as well as any such further relief as the Court deems just and proper.

### COUNT V – CONVERSION
#### Brown, derivatively on behalf of Metrics v. Andreatta

105. Brown incorporates by reference his allegations in paragraphs 1-67 as set forth herein.

106. This is an action by Brown, derivatively on behalf of Metrics, pursuant to Fla. Stat. § 607.07401, against Andreatta for conversion, for damages in excess of $15,000, exclusive of interest, cost, and attorneys' fees, and for injunctive and equitable relief.

107. Brown owns 50% of the shares of Metrics.

108. Andreatta converted the assets and property of Metrics when she, among other things, improperly deleted and destroyed Metrics' files and records, made unauthorized withdrawals from the account of Metrics, and transferred the Patent from Metrics to herself.

109. Metrics has suffered damages as a result of Andreatta's conversion of its assets and property for her own personal use.

WHEREFORE, Brown, derivatively on behalf of Metrics, demands judgment against Andreatta for damages, interests, costs, and an award of attorneys' fees pursuant to Fla. Stat. §

607.07401, injunctive and/or equitable relief in the form of an order removing Andreatta as an officer and director of Metrics, preventing Andreatta from having further involvement in the management of Metrics, ordering the return of the CareAssess Product content and access to its original state, and revoking the improper dissolution of Metrics, as well as any such further relief as the Court deems just and proper.

Dated: August 3, 2018

/s/ Tori C. Simmons
David L. Luikart III, Fla. Bar No. 21079
dave.luikart@hwhlaw.com
Patrick M. Mosley, Fla. Bar No. 33735
patrick.mosley@hwhlaw.com
Tori C. Simmons, Fla. Bar. No. 107081
tori.simmons@hwhlaw.com
HILL, WARD & HENDERSON, P.A
Post Office Box 2231
Tampa, Florida 33601-2231
(813) 221-3900 (Telephone)
(813) 221-2900 (Facsimile)
*Attorneys for Plaintiff*

11479857v4

## VERIFICATION

I, Eric A. Brown, hereby certify that the facts set forth in the foregoing Verified Complaint are true and correct.

_____
Eric A. Brown

STATE OF South Carolina     }
COUNTY OF Richland          }

Before me, the undersigned Notary Public, in and for said County and in said State, personally appeared Eric A. Brown, who is personally known to me or who produced SC Drivers Lic. as identification, and who, being duly sworn by me, deposes and states that the Verified Complaint is true and correct to the best of his knowledge and belief.

SWORN TO AND SUBSCRIBED before me, on this the 3 day of August, 2018.

_____
NOTARY PUBLIC
My Commission Expires CYNTHIA McGRIFF
Notary Public, State of South Carolina
My Commission Expires 4/12/2023

11483384v1